UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMAURY URENA,

                Plaintiff,

      v.

THE CITY OF NEW YORK; CAPTAIN TERRANCE SHAW; CO INGRAM LAGUERRE; and CO ABRAHAM ORTIZ,

                Defendants.

No. 22-CV-4679 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Amaury Urena brings this action against Captain Terrance Shaw, Correction Officers Ingram Laguerre and Abraham Ortiz, and the City of New York ("Defendants"). Urena, a pre-trial detainee on Rikers Island, alleges that Defendant Shaw used excessive force against him during a strip search, in violation of 42 U.S.C. § 1983; that Defendants Laguerre and Ortiz acted with deliberate indifference to unlawful conditions of confinement, also in violation of 42 U.S.C. § 1983; and that all Defendants violated his rights under the New York City Administrative Code. Now before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, Plaintiff's motion is denied in full, while Defendants' motion is granted in part and denied in part. In particular, Defendants' motion is denied with respect to Urena's excessive force claim under 42 U.S.C. § 1983 against Shaw, but granted as to Urena's remaining claims.

## BACKGROUND

The following facts are drawn from the pleadings, the parties' Rule 56.1 Statements, and their opposition papers.[1] The facts cited are undisputed unless otherwise noted. On April 21, 2022,

---

[1] In light of the "special solicitude" afforded to *pro se* litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court has "endeavored to discern from the

Urena was housed at the North Infirmary Command on Rikers Island as a pre-trial detainee. Dkt. No. 44 ("Def. 56.1 Statement") ¶ 1. That morning, he started a fire in his cell because, he asserts, he was "feeling suicidal" and was in a "deep depression" after officers gave his "bag of commissary away." Dkt. No. 48 ("Pl. 56.1 Statement") ¶ 2; *see* Dkt. No. 43 ("Forcier Decl."), Ex. A ("Pl. Tr.") at 15.[2] Later that day, Shaw, Laguerre, and Ortiz escorted him to a single-person intake cell "to be searched for contraband before being transferred to a different facility." Def. 56.1 Statement ¶¶ 3–4. The intake cell was entirely enclosed by a chain-link structure. *See* DOC Genetec Video Footage ("DOC Footage") at 18:10:58–18:11:03. Initiating a strip search, Defendants instructed Urena to remove his clothing. Def. 56.1 Statement ¶¶ 3–4. Although he did remove his clothes, Urena "refused to comply with the search by not showing both of his hands at the same time and moving to the back of the search pen." *Id.* ¶ 5; *see* DOC Footage at 18:00:14–18:09:25. Defendants then left Urena alone in his intake cell for approximately ten minutes, although Shaw returned periodically in an attempt to gain Urena's compliance. Def. 56.1 Statement ¶¶ 6–7. Urena asserts that, during this time, Shaw "threatened the deployment of

---

record if there is any evidentiary support for the assertions contained in the [c]omplaint … and to determine if there are any other material issues of fact based on the evidence in the record." *Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11-cv-3872, 2013 WL 2922483, at *2 (S.D.N.Y. June 14, 2013); *see Geldzahler v. N.Y. Med. Coll.*, 746 F. Supp. 2d 618, 620 n.1 (S.D.N.Y. 2010). Defendants argue that some of Urena's statements, without citation to admissible evidence, violate Local Rule 56 and should be disregarded entirely. *See* Dkt. No. 50 ("Def. 56.1 Response") ¶¶ 1–2 & n.1, ¶ 8. The Court, however, has "in its discretion opt[ed] to conduct an assiduous review of the record even where one of the parties" failed to comply with local rules. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

[2] Defendants dispute Urena's assertion that officers gave his commissary items away. Def. 56.1 Response ¶ 2.

chemical agents." Pl. 56.1 Statement ¶ 3.[3] Eventually, Urena complied with the strip search and the officers returned his clothes. Def. 56.1 Statement ¶¶ 9–10.

As Urena dressed, however, he began to argue with Shaw. *Id.* ¶ 11; Pl. Tr. at 27. During the argument, Urena used vulgar, antagonistic language, which he alleges "ticked [Shaw] off." Pl. Tr. at 27. Urena also asserts that Shaw "argu[ed] back and forth" with him, and taunted him by saying, "[w]hat you gonna do about it? I do what I want." *Id.* He further maintains that Shaw "read[ied] himself for the premeditated deployment" of chemical spray. Pl. 56.1 Statement ¶ 7. Urena then spit at Shaw, who was standing several feet away, outside of Urena's locked cell. *See* DOC Footage at 18:09:27–18:11:12.[4] In response, Shaw immediately deployed chemical spray at Urena's face. *Id.*; *see* Def. 56.1 Statement ¶¶ 12–13.[5] Urena retreated to the corner of the intake cell, and Shaw briefly adjusted the direction of the chemical spray toward Urena before stopping. *See* DOC Footage at 18:11:00–18:11:03. The chemical spray deployment lasted approximately two seconds. *See id.* As a result, Urena says his "whole body felt like it was on fire," he "couldn't breathe" because his "lungs [were] closed in," and his "eyes felt blurry." Pl. Tr. at 32. Urena stumbled to the floor and remained there for approximately ten minutes before officers, dressed in decontamination gear, escorted him out of his cell. *See* DOC Footage at 18:11:24–18:22:35. He

---

[3] Defendants dispute that Shaw "threatened the deployment of chemical agents," Def. 56.1 Response ¶ 3, although it appears from the video footage that Shaw was holding a spray can in his right hand during most, if not all, of Urena's strip search, *see* DOC Footage 18:09:27–18:11:03.

[4] Although Urena denies doing so, it is clear from the video footage that that he did spit at Shaw. Defendants claim that Urena's saliva "ma[de] contact with [Shaw's] face," and that Shaw subsequently left the area to wash his face. Forcier Decl., Ex. C ("DOC Use of Force Report") at D000021–22, Ex. D ("DOC Use of Force Witness Report") at D000023. The holes in the chain-link intake cell appear large enough for saliva to exit the cell. *See* DOC Footage at 18:10:58–18:11:03.

[5] Urena alleges that Shaw deployed a "riot-sized can of chemical agent" that "is reserved only for situations where officers need to gain the compliance of an entire group" rather than an individual "already confined in a cell." Am. Compl. ¶ 32; *see* Dkt. No. 49 ("Pl. Br.") at 4. He defines this spray as "riot spray" and "chemical mace" in the amended complaint, and as "MK9 (bear repellent/pepper spray)" in his Memorandum of Law. *See* Am. Compl. ¶¶ 36, 40; Pl. Br. at 1. Defendants describe the chemical agent as "chemical spray" without specifying what type or whether its intended use is for groups or individuals. *See* Def. 56.1 Statement ¶ 13; Def. 56.1 Response ¶ 7.

was then decontaminated and treated with pain medication. His pain subsided after twenty-four hours. Pl. Tr. at 32. He was later transferred to a different correctional facility. *Id.* at 34.

Urena initiated this action, with the assistance of counsel, on June 3, 2022, and filed an amended complaint—the now operative complaint—on February 1, 2023. On September 8, 2023, Defendants filed a motion for summary judgment. Dkt. No. 42. On September 11, 2023, Urena, proceeding *pro se*, filed a cross-motion for summary judgment. Dkt. No. 49.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 49 (2d Cir. 2009).[6] A fact is material if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary [under the governing law] will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there is a genuine issue of material fact, the Court must view all facts in the light most favorable to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). But where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

While "[t]he movant has the burden of showing that there is no genuine issue of fact," the non-moving party "is not thereby relieved of [her] own burden of producing in turn evidence that

---

[6] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

would support a jury verdict." *Anderson*, 477 U.S. at 256. In other words, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial" to defeat summary judgment. *Id.*; *see also Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) ("[I]f the [defendant] has made a properly submitted motion [for summary judgment], the plaintiff . . . must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden.").

Lastly, it is "well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants, particularly where motions for summary judgment are concerned." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). Thus, "[c]ourts read the pleadings, briefs, and opposition papers of pro se litigants 'liberally and interpret them to raise the strongest arguments that they suggest.'" *Rivera v. Goulart*, No. 15-cv-2197, 2018 WL 4609106, at *2 (S.D.N.Y. Sept. 25, 2018) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)).

## DISCUSSION

### I.   Excessive Force Claim

Urena first alleges that Shaw unlawfully used excessive force when he sprayed him with a chemical agent, in violation of the Fourteenth Amendment. Dkt. No. 19 ("Am. Compl.") ¶¶ 39–42.[7] Defendants respond that any use of force against Urena was "objectively reasonable and justified," and that, even, assuming *arguendo*, that Shaw violated Urena's constitutional rights, he is nevertheless entitled to qualified immunity. Dkt. No. 45 ("Def. Br.") at 4–7, 9–11. For the reasons that follow, the Court denies both parties' summary judgment motions as to this claim because a rational jury could find either that Shaw's actions were objectively reasonable or

---

[7] Urena brings his claim under 42 U.S.C. § 1983, which imposes civil liability on individuals, acting under color of state law, who deprive a plaintiff of any federal rights. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A pretrial detainee who is subjected to excessive force may bring a claim under § 1983." *Quinones v. Rollison*, No. 18-cv-1170, 2020 WL 6420181, at *3 (S.D.N.Y. Nov. 1, 2020).

unreasonable, and because material, factual disputes exist that also preclude summary judgment on qualified immunity grounds at this time.

### A. Objective Reasonableness of Force

The right of pretrial detainees to be free from excessive force is protected by the Due Process Clause of the Fourteenth Amendment. *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999); *Kingsley v. Hendrickson,* 576 U.S. 389, 398 (2015).[8] To prevail on an excessive force claim, a pretrial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396–97. When evaluating objective reasonableness, courts must consider the "facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. The Supreme Court has also provided several "potentially relevant" factors that "may bear on the reasonableness or unreasonableness of the force used," including: whether the amount of force was proportionate to the need for the use of force; the extent of the plaintiff's injury; whether an officer made efforts to limit the amount of force; the "severity of the security problem at issue"; whether the plaintiff was "actively resisting"; and "the threat reasonably perceived by the officer." *Kingsley*, 576 U.S. at 397.

Courts must make an objective reasonableness determination from the perspective of a reasonable officer on the scene without hindsight bias, and, in the context of a correctional facility, they must consider the "legitimate interests" officers have in managing a facility, which include "preserv[ing] internal order and discipline" and "maintain[ing] institutional security." *Id.*; *see*

---

[8] While many excessive force claims invoke the Fourth Amendment's prohibition against unreasonable seizures or the Eighth Amendment's ban on cruel and unusual punishments, *Graham v. Connor*, 490 U.S. 386, 393–94 (1989), Urena's claim is governed by the Fourteenth Amendment. As a pretrial detainee, Urena is within the "legal twilight zone" between arrest and conviction. *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000). The Fourteenth Amendment establishes his right against excessive force because "[t]he touchstone of due process" is the "protection of the individual against arbitrary action of government." *Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). Fourth and Eighth Amendment excessive force cases are nonetheless instructive when evaluating the scope of a pretrial detainee's rights. *Hart v. Suffolk Cnty.*, No. 17-cv-5067, 2023 WL 5720075, at *14 n.15 (E.D.N.Y. Sept. 5, 2023).

*Graham*, 490 U.S. at 396–97 ("The calculus of reasonableness must embody allowance for the fact that . . . officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a[n inmate's] constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). Nonetheless, when exercising any force, an officer must still show that the force was objectively "necessary and proportionate to the circumstances." *Edrei*, 892 F.3d at 540.

The use of pepper spray "constitutes a significant degree of force." *Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010). Accordingly, the Second Circuit has cautioned that pepper spray "should not be used lightly or gratuitously against an arrestee who is complying with police commands or otherwise poses no immediate threat to the arresting officer." *Id.* Given the "variety of incapacitating and painful effects" that pepper spray produces, *id.*, courts must carefully consider whether a detainee is "actively resisting" or poses a "threat to the safety of officers or others" when the officer deploys such force, *Jones v. Treubig*, 963 F.3d 214, 225 (2d Cir. 2020). When considering an excessive force claim on summary judgment, a court's role "is to determine whether a jury, instructed as to the relevant factors, could reasonably find that the force used was excessive." *Brown v. City of New York*, 798 F.3d 94, 103 (2d Cir. 2015).

Here, Defendants argue that Shaw's use of the spray was objectively reasonable, and therefore not excessive, under the circumstances. *See* Def. Br. at 5. They contend that Urena "provoked the incident" by spitting at Shaw, that Shaw only used a two-second burst of spray in response, that the force was necessary because Shaw "repeatedly refused to comply with orders, yelled, and acted aggressively," and that Urena's resulting injuries were mild. *Id.* at 5–7. Defendants also aver that Urena's "surprise attack" provoked a "split second decision" by Shaw,

7

which itself "was a reasonable reaction . . . in order to restore and maintain discipline." *Id.* at 7. Thus, they argue, Urena's excessive force claim fails as a matter of law. *Id.*

As Defendants rightly note, it was Urena who provoked Shaw's use of the spray when he intentionally spat in Shaw's direction. Although Urena appears to contest Defendants' characterization of his abrupt spitting, *see* Pl. Br. at 6, the video evidence clearly corroborates Defendants' depiction of these events, *see* DOC Footage at 18:10:58–18:11:03. *See also Scott v. Harris*, 550 U.S. at 380. Under New York law, the act of spitting in someone's face may constitute civil assault and civil battery. *D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 364 (S.D.N.Y. 2017); *see also United States v. Delis*, 558 F.3d 177, 183–84 (2d Cir. 2009) (holding that "offensive touching," which can include "spitting on another," constitutes simple assault, as criminalized by 18 U.S.C. § 113(a)(5)). The act of spitting may also reasonably require the use of some force "to control [a] plaintiff from committing further [such] acts." *Bonet v. Shaw*, 669 F. Supp. 2d 300, 304 (W.D.N.Y. 2009).[9] Thus, the use of some force may, in certain circumstances, be consistent with the legitimate law enforcement objectives of preventing further spitting and "preserv[ing] internal order and discipline." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Defendants make this argument here, maintaining that one burst of the spray was a proportionate attempt "to stop the assault, restore order, and maintain discipline." *See* Def. Br. at 5.[10]

---

[9] For example, some courts have held that if a detainee spits at an officer, the officer may use a "spit mask" or "spit veil" to prevent repeated violations. *See, e.g.*, *Baltas v. Rivera*, No, 19-cv-1043, 2020 WL 6199821, at *16 (D. Conn. Oct. 22, 2020) (also holding that "there are no reported cases in this circuit finding a constitutional right preventing" an officer's use of a spit veil).

[10] Defendants cite several district court decisions for the proposition that "a correction officer's use of pepper spray on an inmate who refuses to comply with orders in [an effort] to maintain or restore discipline and stop an assault is reasonable." Def. Br. at 6. But each of those cases is distinguishable from this one in terms of the danger presented to the officer. In *Anderson v. Darby*, for example, a confined plaintiff "proceeded to grab [an officer's] right arm and pulled [him] into the feeding slot," ignoring "loud verbal commands" to release the officer before the officer deployed a chemical spray. No. 15-cv-0635, 2017 WL 933085, at *2 (E.D.N.Y. Feb. 13, 2017). Similarly, in *Frost v. Davis*, a plaintiff "abruptly" stood up and moved toward officers as they were exiting his cell and "pushe[d] into" an officer's shield before being tackled and sprayed with a chemical agent. No. 17-cv-8418, 2019 WL 4512620, at *3 (S.D.N.Y. Sept. 18, 2019); *see also Vazquez v. Spear*, No. 12-cv-6883, 2014 WL 3887880, at *1, 4–5 (S.D.N.Y. Aug. 5, 2014)

A reasonable jury might agree, but, weighing the following countervailing factors, it also might not.

First, a jury might be swayed by the fact that Urena was locked by himself in an enclosed, single-person intake cell when he spat at Shaw, who stood several feet away. *See* DOC Footage at 18:10:58–18:11:03. Unlike cases where chemical spray is deployed to break up fights or the environment otherwise presents a serious risk to officer safety, *see, e.g.*, *Quinones*, 2020 WL 6420181 at *2, Defendants here faced no similar threat, *see Soto v. Bautista*, 2023 WL 2624785, at *4 (5th Cir. 2023) ("[W]e are unconvinced that spitting a single time poses more than a de minimis risk to an officer's safety."). A jury could thus find that Urena, spitting from within a locked enclosure, did not pose a serious "threat to the safety of officers or others." *Jones*, 963 F.3d at 225; *see also Tracy*, 623 F.3d at 98 ("conclud[ing] that a reasonable juror could find that the use of pepper spray deployed mere inches away from the face of a defendant already in handcuffs and offering no further active resistance constituted an unreasonable use of force" and denying summary judgment).

Second, Shaw deployed the spray immediately, without any attempt to deescalate the situation or use any other strategy to address Urena's actions. Recognizing that pepper spray "should not be used lightly or gratuitously" against individuals who pose "no immediate threat," *Tracy*, 623 F.3d at 98, Shaw could have verbally warned Urena that any successive spitting would be met with chemical spray. Or he could have taken a few steps back and reprimanded Urena before resorting to the use of the spray. Although Shaw had a legitimate interest in preventing

---

(noting the plaintiff's active, physical resistance to being handcuffed and the officer's subsequent use of de minimis force to place the plaintiff in handcuffs). Defendants have provided no case more akin to this one—where an officer used chemical spray after an inmate spat at the officer from inside a locked cell. *See Lewis v. Clarkstown Police Dep't*, No. 11-cv-2487, 2014 WL 1364934, at *5 (S.D.N.Y. Mar. 31, 2014) (rejecting the argument that chemical spray "is always permitted simply because a detainee, confined to his cell, is noncompliant").

9

further spitting and maintaining order and discipline, a reasonable jury could find that—by immediately deploying the "incapacitating and painful" chemical spray, *Tracy*, 623 F.3d at 98— Shaw failed to reasonably "temper or . . . limit the amount of force" used against Urena, *Kingsley*, 576 U.S. at 397. *See also Brown*, 798 F.3d at 102–03 (noting "the availability of a much less aggressive technique" for obtaining compliance); *Soto*, 2023 WL 2624785, at *4 (finding that force against a plaintiff who spat once at an officer reflected "an impulsive, violent response to perceived disrespect" rather than an objectively reasonable response).

Third, despite Urena's relatively short-lived injuries, even a single burst of chemical spray can constitute more than a de minimis use of force. *See, e.g.*, *Javier v. Russo*, No. 21-cv-7097, 2023 WL 5532468, at *2, *7 (S.D.N.Y. Aug. 28, 2023) (rejecting defendant's argument that pepper spraying a plaintiff locked in his cell was a de minimis use of force); *Jones v. Wagner*, No. 20-cv-475, 2022 WL 1525134, at *2, *6 (D. Conn. May 13, 2022) (denying summary judgment where a defendant "deployed a single burst of chemical agent" in a plaintiff's face); *Mobley v. Mallow*, No. cv-18-3515, 2019 WL 6217881, at *6 (D. Md. Nov. 21, 2019) ("Use of a chemical agent against an inmate confined in a 'strip cage' is a nontrivial use of force."); *Tracey*, 623 F.3d at 98. Here, Shaw deployed the chemical spray into Urena's face from several feet away, and Urena's reaction—covering his eyes, retreating to the corner of his cell, and stumbling to the floor—evinces a painful experience. *See* DOC Footage at 18:10:58–18:12:13. Further, Urena remained on the floor for approximately ten minutes before officers removed him from the cell to be decontaminated. *Id.* at 18:11:24–18:22:35; Pl. Tr. at 34. A reasonable jury could therefore find that Shaw used more than de minimis force against Urena. *See Feliciano v. Thomann*, 747 F. App'x 885, 887 (2d Cir. 2019); *Edrei*, 892 F.3d at 540 (noting the "longstanding test" for excessive force claims that "force must be necessary and proportionate to the circumstances").

Ultimately, the "assessment of a jury is needed," *Brown*, 798 F.3d at 103, as to whether Shaw's use of force was proportionate to Urena's provocation. At the summary judgment stage, even when "most of the facts concerning the application of force are undisputed," the factual determination of excessiveness is left to a jury, "whose collective common sense, informed by their life experiences, may well exceed" that of this Court. *Brown*, 798 F.3d at 103. In this case, a rational jury could conclude that Shaw's decision to deploy chemical spray was objectively reasonable or unreasonable under the circumstances.

### B. Qualified Immunity

Shaw next argues that he is entitled to qualified immunity, thereby shielding him from liability at this stage in the litigation. The Court disagrees. The doctrine of qualified immunity serves to protect government officials from civil liability for actions taken under color of law. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In assessing whether officials are entitled to qualified immunity, courts conduct a two-step analysis, considering "(1) whether the facts presented make out a violation of a constitutional right; and (2) whether the right at issue was clearly established when it was allegedly violated." *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 367 (2d Cir. 2021). While the first inquiry necessary overlaps with whether there was a violation of Urena's Fourteenth Amendment rights, the second inquiry also "tends to converge with the first [inquiry] in excessive force cases, with the question ultimately being whether, in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed was lawful." *Weather v. City of Mount Vernon*, 474 F. App'x 821, 824 (2d Cir. 2012); *see Saucier v. Katz*, 533 U.S. 194, 210 (2001) (Ginsburg, J., concurring) (acknowledging that "paradigmatically,

the determination of [officer] misconduct in excessive force cases and the availability of qualified immunity both hinge on the same question").[11]

As discussed above, there is an open factual question as to whether Shaw violated Urena's constitutional rights. The first prong of the qualified immunity test thus does not foreclose Urena's excessive force claim. The Court therefore turns to whether Shaw met his burden of establishing that the right to be free of the force at issue here was not clearly established. *Lewis*, 2014 WL 1364934, at *9; *see Pearson*, 555 U.S. at 227 (holding that, where a government official violates a plaintiff's constitutional rights, the doctrine of qualified immunity nonetheless shields that official from liability if "it was not clearly established at the time . . . that [the officer's] conduct was unconstitutional").

"A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022). "This requires that controlling authority or a robust consensus of cases of persuasive authority have recognized the right at issue." *Id.* at 738–39. In excessive force cases, the ultimate question becomes "whether, in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed was lawful." *Weather*, 474 F. App'x at 824.

As relevant here, the Second Circuit has held that it is "well established" that "the use of entirely gratuitous force is unreasonable and therefore excessive." *Tracy*, 623 F.3d at 99 n.5; *see Jones*, 963 F.3d at 226. It is also "beyond doubt that any reasonable . . . officer would know that the use of . . . pepper spray[] constitutes significant force," *Jones*, 963 F.3d at 226. In light of such

---

[11] "Even where this convergence occurs, however, courts should" still address the "clearly established" prong. *Cowan ex rel. Est. of Cooper v. Breen*, 352 F.3d 756, 764–65 n.7 (2d Cir. 2003) (noting that "genuine issues of material fact" may preclude summary judgment on "both the question [of] whether [a defendant] used excessive force and the question [of] whether he reasonably believed that his use of force was lawful"); *see Pearson*, 555 U.S. at 236.

precedent, "no reasonable officer could . . . believe[] that he [is] entitled to use pepper spray gratuitously against a restrained and unresisting arrestee." *Tracy*, 623 F.3d at 99 n.5; *see also Taylor v. Nieves*, No. 17-cv-7360, 2020 WL 7028907, at *3 (S.D.N.Y. Nov. 30, 2020) ("Second Circuit precedent clearly disallows the gratuitous use of pepper spray against restrained individuals.").

The Supreme Court, moreover, has reiterated that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment," which can include force that is not "rationally related to a legitimate nonpunitive governmental purpose" or that "appear[s] excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398; *see Graham*, 490 U.S. at 395 n.10 ("It is clear . . . that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."). Courts in this Circuit regularly find unconstitutional the intentional use of force that serves no legitimate, nonpunitive purpose. *See Moran v. Tesei*, No. 19-cv-722, 2023 WL 3570670, at *12 (D. Conn. May 19, 2023) (collecting cases); *Sanders v. Garden City Police Dep't*, No. 09-cv-2393, 2015 WL 5518589, at *7 n.2 (E.D.N.Y. Sept. 16, 2015) (noting that an officer's use of force would be excessive if the conduct "serv[ed] no purpose other than to inflict discomfort and pain").

The question of "whether a reasonable official would reasonably believe his conduct did not violate a clearly established right[] is a mixed question of law and fact." *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004). Thus, although a qualified immunity defense "can be disposed of by summary judgment where possible," summary judgment is not appropriate "when there are material factual disputes." *Stephenson v. Doe*, 332 F.3d 68, 76–77 (2d Cir. 2003). Indeed, the Second Circuit has cautioned that a jury must weigh in where excessive force and qualified immunity issues "overlap" due to material facts in dispute. *Id.* at 81. When this occurs, "the jury

should decide these issues on special interrogatories." *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990); *see Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007); *Oliveira v. Mayer*, 23 F.3d 642, 650 (2d Cir. 1994).

"[A] judicial determination as to what a reasonably competent officer would conclude in a particular situation requires an objective factual determination as to the mindset of reasonably competent officers." *Brown v. City of New York*, No. 13-cv-1018, 2016 WL 1611502, at *6 (S.D.N.Y. Apr. 20, 2016), *aff'd*, 862 F.3d 182 (2d Cir. 2017). As the Circuit has explained, "it is the jury's province to resolve the reasonableness of an officer's perception of the facts that confronted him," and "those same facts . . . can also sometimes be critical in deciding the [clearly-established step of a court's] qualified immunity analysis." *Jones*, 963 F.3d at 231.

As noted earlier, although video footage captures the incident in question, there remain disputed factual questions—such as the degree of risk that Urena posed to Shaw or others and whether Shaw deployed the spray for a legitimate or punitive purpose—that are material to whether it was objectively reasonable for Shaw to believe his use of force was lawful under the circumstances. Thus, the "assessment of a jury is needed in this case," *Brown*, 798 F.3d at 103, to determine, among other things, whether Shaw's force was "entirely gratuitous," *Ross v. Willis*, No. 16-cv-6704, 2021 WL 3500163, at *14 (S.D.N.Y. Aug. 9, 2021), not "rationally related to a legitimate nonpunitive governmental purpose," *Kingsley*, 576 U.S. at 398, or—if rationally related to a legitimate nonpunitive governmental purpose—"excessive in relation to that purpose," *id.*

Other courts in this district have concluded as much in similar circumstances. For example, in *Wiggan v. NYC Dep't of Corrs.*, which concerned an officer's use of pepper spray on an inmate who had disobeyed orders but was confined in a cell, the court denied summary judgment because a factfinder might infer that the officer's use of the spray was "in retribution for plaintiff's refusal

14

to obey his order and the disrespect he showed" rather than "in a good-faith effort to maintain or restore discipline." No. 12-cv-1405, at *1, *27 (S.D.N.Y. Aug. 21, 2014) (ECF No. 46), *report and recommendation adopted*, 2014 WL 4631456 (S.D.N.Y. Sept. 16, 2014). In *Ross v. Willis*, moreover, the court held that a defendant officer who pepper sprayed an inmate was not entitled to summary judgment on the basis of qualified immunity because there was a factual question as to whether the inmate, who had been confined to his cell, physically resisted attempts to be handcuffed. No. 16-cv-6704, 2021 WL 3500163, at *13–14 (S.D.N.Y. Aug. 9, 2021).

Accordingly, the Court denies the parties' cross-motions for summary judgment as to Urena's excessive force claim against Shaw.

## II.   Deliberate Indifference Claims

Urena next argues that Laguerre and Ortiz failed to intervene, "leaving [him] naked inside of a search pen for a prolonged period and duration." Pl. Br. at 1. Urena acknowledges that "there was nothing [Laguerre and Ortiz] could do" about Shaw's use of chemical spray in the moment, Pl. Br. at 1, but he nonetheless alleges that the officers acted with "deliberate indifference" by "knowingly and deliberately" leaving him alone "to suffer the effects of the spray, rather than rending him aid," Am. Compl. ¶ 46.[12] Urena thus brings a claim for deliberate indifference to his conditions of confinement, which can include officers depriving detainees of the right to receive medical care, among other basic human needs. *See Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012).

---

[12] As Defendants correctly note, Urena has abandoned the specific claim that Laguerre and Ortiz failed to intervene in the alleged use of excessive force. *See Lipton v. Cnty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004); Dkt. No. 51 ("Def. Reply Br.") at 5–6 & n.6. But Defendants wrongly contend that the Court "need not" consider claims against Laguerre and Ortiz, because, contrary to their assertions, *id.*, the amended complaint does assert a deliberate indifference claim, *see* Am. Compl. ¶ 46 ("Laguerre and Ortiz knowingly and deliberately left Plaintiff naked and alone to shame him, and then left him a second time to suffer the effects of the spray, rather than rendering him aid, thereby displaying deliberate indifference to Plaintiff's rights.").

A pretrial detainee's claim of unconstitutional conditions of confinement is governed by the Due Process Clause of the Fourteenth Amendment. *Darnell v. v. Pinheiro*, 849 F.3d 17, 29 (2d Cir. 2017). To succeed on a deliberate indifference claim alleging a failure to provide medical treatment, a detainee first must show "that the injury or illness caused a serious medical condition." *Ross*, 2021 WL 3500163, at *17. In particular, a "serious medical condition is generally understood to be one that may produce death, degeneration, or extreme pain." *Id.*; *Johnson v. Schiff*, No. 17-cv-8000, 2019 WL 4688542, at *14 (S.D.N.Y. Sept. 26, 2019) (noting that a condition is sufficiently serious if a plaintiff "suffer[s] permanent effects" or "lasting physical injuries"). Second, a plaintiff must show that "the defendant acted with deliberate indifference toward that medical condition, so as either to cause it or expose the plaintiff to risk from it." *Ross*, 2021 WL 3500163, at *17. To establish deliberate indifference under the Fourteenth Amendment, a plaintiff needs to show that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed . . . even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. This second element is referred to as the "*mens rea* prong*,*" and "is defined objectively." *Id.*

"In cases of delayed medical treatment, . . . the Court should focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Williams v. City of New York Dep't of Corr.*, 2020 WL 3893929, at *4 (S.D.N.Y. July 10, 2020) (emphasis omitted). Here, after Shaw sprayed Urena, Defendants let Urena lie on the floor for approximately ten minutes before officers in decontamination gear entered his cell and escorted him to be decontaminated and treated. These actions do not constitute an objective deprivation of Urena's right to due process.

First, numerous judges in this district have routinely held that the "temporary effects of chemical spray"—while "undoubtedly uncomfortable and painful"—"do not rise to the level of producing death, degeneration, or extreme pain" as is required to establish a deliberate indifference claim. *Holmes v. City of New York*, No. 17-cv-3874, 2018 WL 4211311, at *7 (S.D.N.Y. June 30, 2022); *see, e.g.*, *Lewis*, 2014 WL 1364934, at *7 (rejecting a deliberate indifference claim based on the effects of chemical gel as a matter of law because "the temporary discomfort caused by pepper spray or mace does not constitute a sufficiently serious injury"); *Ross*, 2021 WL 3500163, at *18 (dismissing a deliberate indifference claim based on the deployment of pepper spray); *Johnson*, 2019 WL 4688542, at *14 (same); *Rodriguez v. Cohall*, No. 21-cv-1810, 2022 WL 1228411, at *4–5 (S.D.N.Y. Apr. 26, 2022) (same).

Urena asserts that the chemical spray caused his whole body to "fe[el] like it was on fire," that he "was having trouble breathing," and that his eyes "felt blurry." Pl. Tr. at 32. But, as Defendants note and Urena does not dispute, he was decontaminated ten minutes later and received additional treatment that same day. Def. 56.1 Statement ¶ 14; Pl. Tr. at 32, 34. Urena was also provided pain medication and acknowledges that his pain subsided after twenty-four hours. *Id.* To be sure, the deployment of chemical spray into Urena's face appears to have resulted in significant pain. *See* DOC Footage at 18:10:58–18:12:13. But there is no evidence that he "suffered permanent effects or serious injury from the . . . spray" sufficient to establish a deliberate indifference claim. *Johnson*, 2019 WL 4688542, at *14.

Second, even if Urena's medical needs resulting from the chemical spray had been sufficiently serious to meet prong one of this claim, he nonetheless fails to raise a genuine factual dispute concerning whether Laguerre and Ortiz acted recklessly in their temporary denial of his medical care. No evidence has been presented suggesting that the ten-minute delay risked serious

damage to his health or worsened any medical condition, and the short duration of the delay militates against a finding of objective recklessness. Numerous courts in this circuit have similarly held that temporary delays in treatment after a chemical spray incident do not, without more, establish deliberate indifference. *See, e.g.*, *Liverpool v. Davis*, 442 F. Supp. 3d 714, 737 (S.D.N.Y. 2020) (rejecting a deliberate indifference claim, in the Eighth Amendment context, where a plaintiff was forced to wait three hours to receive medical attention after being exposed to "a chemical irritant akin to pepper spray"); *Blond v. City of Schenectady*, No, 10-cv-0598, 2010 WL 4316810, at *5 (N.D.N.Y. Oct. 26, 2010) (rejecting an inadequate medical care claim whether plaintiff "was sprayed with pepper spray and [] was not permit[ed] to rinse his eyes for thirty to sixty minutes"). Further, the record does not establish that "the delay in treatment caused his condition to worsen," nor does Urena challenge "the reasonableness of the medical treatment that he eventually received." *Liverpool*, 442 F. Supp. 3d at 737. Accordingly, the Court grants Defendants' summary judgment motion as to Urena's deliberate indifference claims against Laguerre and Ortiz.[13]

### III.   NYCAC Claim

Finally, Urena brings a claim against Shaw, Laguerre, Ortiz, and the City of New York to enforce the right established by the New York City Administrative Code ("NYCAC") § 8-802 "to be secure . . . against unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure." Defendants state, and Urena does not dispute, that he failed to file a notice of claim related to the incident underlying this lawsuit. Def. 56.1 Statement ¶ 16; Pl. Br. at 11. Defendants thus argue

---

[13] In light of this ruling, the Court need not determine whether the officers are entitled to qualified immunity. *See Posr v. City of New York*, No. 10-cv-2551, 2013 WL 2419142, at *10 n.8 (S.D.N.Y. June 4, 2013), *aff'd sub nom. Posr v. Ueberbacher*, 569 F. App'x 32 (2d Cir. 2014) ("Because [the defendant] did not violate [the p]laintiff's Fourteenth Amendment rights, there is no need to consider if [the defendant] is entitled to qualified immunity.").

that Urena's claim fails because he did not serve a notice of claim in compliance with New York General Municipal Law § 50-e. *See* Def. Br. at 15–16. Urena asks the Court to extend the deadline for service of a notice of claim—if required—in light of his *pro se* status. Pl. Br. at 11.

The Court need not address the notice of claim issue because, even assuming Urena had not been required to provide notice, his claim under New York City Administrative Code §§ 8-801 through 8-807 would fail. Pursuant to § 8-803, "[a] covered individual" acting under color of law "is liable" when he "subjects or causes to be subjected . . . any other natural person to the deprivation of any right that is created, granted, or protected by section 8-802." NYCAC § 8-803(a). The provision also makes "[t]he employer of a covered individual" liable "based upon the conduct of such covered individual." *Id.* § 8-803(b). Under § 8-801, "[t]he term 'covered individual' means (i) an employee of the police department or (ii) a person who is appointed by the police commissioner as a special patrolman." *Id.* § 8-801. Urena does not contend that any of the individual officers were employed by the "police department" or were appointed as "special patrolm[e]n." *Id.* To the contrary, Urena asserts that the officers are "members of the New York City Department of Correction." Am. Compl. ¶ 1. Therefore, Shaw, Laguerre, and Ortiz are not "covered individual[s]" under the code, and cannot be held liable under § 8-803. Because these officers are not "covered individual[s]," the City also cannot be held liable as an "employer of a covered individual." NYCAC § 8-803. The Court thus grants Defendants summary judgment as to Urena's claim under NYCAC §§ 8-801 through 8-807.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is denied with respect to Urena's excessive force claim against Defendant Shaw under 42 U.S.C. § 1983, and granted as to all other claims. Urena's motion for summary judgment is denied in its entirety.

Because Defendants prevail on all claims against Laguerre, Ortiz, and the City of New York, those Defendants are dismissed from this action and the Clerk of Court is respectfully directed to amend the caption accordingly.

The Clerk of Court is also respectfully directed to terminate the motion pending at Dkt. No. 42 and to mail a copy of this Opinion and Order to Urena.

No later than October 10, 2024, Urena shall notify the Court whether he seeks counsel to represent him at trial.

Dated:  September 10, 2024
        New York, New York

_____
Hon. Ronnie Abrams
United States District Judge